CARROLL, DONALD, K., Judge.
The plaintiffs in a suit for injunctive and other relief have appealed from a final decree entered by the Circuit Court for Escambia County denying the relief so sought.
In this dispute among the members of a church congregation, the question before us for determination is whether the said court correctly denied the said relief, the answer to which question largely hinges upon the determination as to whether the form of government of the said church was congregational in character, rather than one bearing an episcopal, presbyterial, representative, or other hierarchical relationship to a parent or mother religious organization.
Briefly stated, the basic facts established by the evidence before the chancellor are as follows:
In 1961 the Friendship Baptist Church, an independent self-governing church in *769 Pensacola, having previously withdrawn its affiliation with the Primitive Baptist denomination, held title to certain property in the said city through some of its officers as trustees of the said church. In the same year the members of the church voted to petition the West Florida Association of Free Will Baptists, hereinafter referred to as the Association, for affiliation, and later adopted a church covenant and by-laws as the “Friendship Free Will Baptist Church,” hereinafter called the church. Afterwards the Association accepted the said petition and extended membership to the church.
Shortly after such petitioning the church called the defendant Fellure as its pastor. In 1964 the ordaining council of the Association revolted Fellure’s credentials on the ground that he was preaching a doctrine that was contrary to the Association’s beliefs. As a result of this action a meeting of the church’s congregation was held and the majority voted to become “ * * * an independent Baptist church of all organizations and associations.”
The plaintiffs, who were the minority of the congregation at the last-mentioned meeting, complained to the Association about the majority’s said action, and the Association declared that the defendants and every other member of the congregation who had voted at the said meeting to withdraw the church from the Association were no longer officers and members of the church, and that the minority members, including the plaintiffs, were entitled to the exclusive use of the church property.
The instant suit was then instituted by the plaintiffs, seeking to divest the defendants of title to the church property and the right to use the property, and seeking to enjoin the defendants from further interference with the plaintiffs’ alleged rights. The plaintiffs sought in their suit to establish an implied trust, claiming that the church government was hierarchical or connectional in form and that the church property had been put to a use by a faith fundamentally different from that intended in its original acquisition.
To the plaintiffs’ complaint the defendants filed their answer denying the complaint’s allegations and counterclaimed, seeking an adjudication of their right, title, and interest to the said church property, and seeking injunctive relief against the plaintiffs.
Following the taking of evidence upon the issues, the chancellor entered the final decree in favor of the defendants, finding that the form of church government involved was independent or congregational, failing to find an implied trust as alleged by the plaintiffs, and granting the relief prayed for by the defendants in their counterclaim.
As indicated near the beginning of this opinion, the pivotal decision in this case is whether the church, at the time it sought to withdraw from the Association, was congregational in character or whether the church bore an episcopal, presbyterial, representative, or other hierarchical relationship to the Association. If the church was congregational — that is, an independent, self-governing church — the affiliation was a voluntary one and the church had the right to withdraw.
In reaching the conclusion that the church government involved in this case was congrégational, the chancellor properly considered and construed the rules, bylaws, and resolutions adopted by the church, by the Association, and by the National Association of Free Will Baptists, as introduced in evidence before him, which throw light on the nature of the relationship between a Free Will Baptist Church and the Association and the said national organization. For example, in 1961, about one month before the church petitioned for and was granted fellowship in the Association, the said national organization, with which the Association was affiliated, adopted at its annual session a policy statement reading in pertinent part:
“One of the distinguishing characteristics of all Baptist groups has been their *770 democratic form of government. Almost without exception Baptist bodies have adhered to the form of church government. Free Will Baptists are no exception. * * *
“The National Association of Free Will Baptists believes now, as it has always believed, in the independence of the local church; holding that ‘the local church is an independent body, so far as it relates to its own government, the transaction of its business, the choice of its officers, and the discipline of its members,’ and these rights cannot be denied the local church by any other organization within or without the denomination.
“The local church has every right to hold and retain title to all property owned by it. A board of trustees, elected for this purpose, shall be invested with authority from the church to make proper and legal transactions, subject to the will and order of the church, and they shall be custodians of all such documents. Free Will Baptist Churches are to be discouraged from surrendering any of these rights to any other organization under any circumstances.”
Later in the said statement reference is made to “ * * * our historic and established form of congregational church government. * * * ” It would serve no useful purpose for us here to quote or discuss the many other provisions in the mentioned rules, by-laws, and resolutions indicating that the church is congregational or independent in character, as distinguished from a church that bears an episcopal, presbyterial, representative, or other hierarchical relationship to a parent or mother organization.
The Chancellor’s conclusion that the church is congregational in character and hence had a right, by a majority vote of its members, to withdraw from the Association, is consistent with many decisions of the1 courts in this and other jurisdictions. For example, the Supreme Court of Florida held in Epperson v. Myers, 58 So.2d 150 (1952) : “The Baptist Church is congregational in government and * * * one of the oldest democratic institutions in this country.” In the later case of St. John’s Presbytery v. Central Presbyterian Church, 102 So.2d 714 (1958), our Supreme Court adverted to “ * * * a church whose government is congregational in form like the Baptist or Congregational denominations * * For a similar classification see the decisions of the district courts of appeal of this state: First Independent Missionary Baptist Church of Chosen v. McMillan, 153 So.2d 337 (1963), and Austin v. Mt. Zion Primitive Baptist Church of West Palm Beach, 165 So.2d 412 (1964). Among the many decisions in other jurisdictions holding to the same effect as the above-cited Florida cases, is Kenesaw Free Baptist Church v. Lattimer, 103 Neb. 755, 174 N.W. 296, 8 A.L.R. 98 (1919), in which the question of majority control arose in connection with a Free Will Baptist Church. In that case, after discussing the history and organization of the Free Will Baptists, the Nebraska Supreme Court held that “ * * * the Free Will Baptist denomination at Kenesaw was an independent governing body, owing no obedience to any higher authority. * * * A local church, being independent, had the right to withdraw from the quarterly meeting and to join another evangelical denomination. * * * ”
For the foregoing reasons we hold that the chancellor correctly made his findings and conclusions in the final decree appealed from herein, so that decree must be and it is
Affirmed.
RAWLS, C. J., and WIGGINTON, J., concur.